15-423-cv
*Dean Nicosia v. Amazon.com, Inc.*

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

————————

August Term 2015

(Argued: November 30, 2015    Decided: August 25, 2016)

Docket No. 15-423-cv

————————

DEAN NICOSIA, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

*v.*

AMAZON.COM, INC.,

*Defendant-Appellee.*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

————————

Before:

SACK, CHIN, and LOHIER, *Circuit Judges.*

————————

Appeal from a judgment of the United States District Court for the

Eastern District of New York (Townes, *J.*), dismissing plaintiff's complaint for

failure to state a claim on the grounds that plaintiff's claims are subject to

mandatory arbitration and denying plaintiff's motion for a preliminary

injunction for lack of standing.  We affirm the district court's denial of plaintiff's

motion for a preliminary injunction, but vacate the dismissal for failure to state a

claim and remand for further proceedings.

AFFIRMED IN PART AND VACATED IN PART AND REMANDED.

---

JOSEPH SETH TUSA, Tusa P.C., Southold, New York, Peter D. St. Phillip, Jr., Scott V. Papp, Lowey Dannenberg Cohen & Hart, P.C., White Plains, New York, Timothy G. Blood, Paula M. Roach, Blood Hurst & O'Reardon, LLP, San Diego, California, *and* Gregory S. Duncan, Esq., Charlottesville, Virginia, *for Plaintiff-Appellant*.

GREGORY T. PARKS, Ezra D. Church, Morgan Lewis & Bockius LLP, Philadelphia, Pennsylvania, *and* Regina Schaffer-Goldman, Mary Claire Dekar, Morgan Lewis & Bockius LLP, New York, New York, *for Defendant-Appellee*.

---

CHIN, *Circuit Judge*:

In 2013, plaintiff-appellant Dean Nicosia purchased *1 Day Diet*, a

weight loss product containing sibutramine, a controlled substance that had been

removed from the market in October 2010, on the website of defendant-appellee

Amazon.com, Inc. ("Amazon").  Nicosia brought this action below, asserting

claims under the Consumer Product Safety Act (the "CPSA"), 15 U.S.C. § 2051 *et seq.*, and state law.

The district court (Townes, *J.*) dismissed the complaint on the ground that the parties are bound by the mandatory arbitration provision in Amazon's Conditions of Use. It found that Nicosia was on constructive notice of the terms and that he assented to mandatory arbitration when he placed his order on the website. In the same memorandum and order, the district court treated Nicosia's motion for preliminary injunctive relief as a motion for a preliminary injunction in aid of arbitration, and denied the motion on the ground that he lacked standing to seek an injunction blocking Amazon from selling items containing sibutramine and requiring Amazon to send remedial notices to consumers.

We affirm the district court's denial of injunctive relief, vacate the dismissal for failure to state a claim, and remand for further proceedings.

## BACKGROUND

I. *The Facts*

A. *As Alleged in the Complaint*

Nicosia is an Amazon customer. On both January 30 and April 19, 2013, he used the Amazon website to purchase *1 Day Diet (One Day Diet) Best*

*Slimming Capsule 60 Pills* ("*1 Day Diet*"), a weight loss drug containing sibutramine. Sibutramine is a Schedule IV stimulant that was withdrawn from the market in October 2010 by the Food and Drug Administration (the "FDA") because its association with cardiovascular risks and strokes outweighed its limited weight loss value. Prior to the FDA's removal of sibutramine from the market, it was only available to consumers with a doctor's prescription. After its removal, the FDA advised physicians to stop prescribing sibutramine and to advise patients to cease its consumption due to its risks, including "major adverse cardiovascular events."[1]

At the time of his purchase, Nicosia did not know that *1 Day Diet* contained sibutramine and he did not have a doctor's prescription. Sibutramine was not listed as an ingredient on Amazon's website or on the *1 Day Diet* packaging, and Amazon sold the product without requiring a prescription. It was only revealed in November 2013 by the FDA that *1 Day Diet* contained sibutramine.

Amazon has since stopped selling *1 Day Diet* but never notified Nicosia that *1 Day Diet* contained the stimulant or offered to refund his

---

[1] U.S. Food & Drug Administration, *FDA Drug Safety Communication: FDA Recommends Against the Continued Use of Meridia (sibutramine)* (Oct. 8, 2010), http://www.fda.gov/Drugs/DrugSafety/ucm228746.htm.

purchases.  As of the filing of the complaint in July 2014, Amazon continued to sell other weight loss products identified by the FDA as containing undisclosed amounts of sibutramine.

**B.  *Additional Factual Assertions***

In moving to dismiss the complaint, Amazon submitted a declaration of a paralegal in its legal department, who represented that Amazon's records showed that Nicosia used an Amazon account created on June 9, 2008 to make his purchases and that the purchases were made in January and April 2013.  Attached to the declaration was a screenshot of Amazon's account registration webpage apparently in use in 2008, bearing a copyright notice dated "1996-2014" (the "Registration Page").  The declaration also attached a screenshot of Amazon's order page, bearing a copyright notice dated "1996-2014"; a customer purchasing an item in 2013 apparently would have seen this screen before completing a purchase.  Amazon later submitted a corrected version of the order page, also bearing a copyright notice dated "1996-2014" (the "Order Page").[2]

---

[2]     The earlier version was submitted in error, as it depicted an order screen for "products manufactured by Amazon, rather than products sold by third parties."  J. App. 88.  Copies of the Registration Page and the Order Page are each reproduced as Addendum A and Addendum B, respectively.

The Registration Page and the Order Page both included a link to Amazon's "Conditions of Use."  The Amazon declaration provided a copy of the conditions of use apparently in effect in 2013, when Nicosia made his purchases, as they were last updated December 5, 2012 ("2012 Conditions of Use").  They included the following mandatory arbitration provision:

> Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court . . . .  We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.

J. App. 20-21 (emphases omitted).

In his opposition to the motion to dismiss, Nicosia challenged Amazon's assertions that he had registered for an Amazon account.  He also introduced a copy of Amazon's prior conditions of use, which his counsel contended were in place in 2008 ("2008 Conditions of Use").  These did not include an arbitration provision, but merely included a choice of forum clause designating "any state or federal court in King County, Washington," as the forum with exclusive jurisdiction and venue over consumer claims exceeding $7,500.  J. App. 50.

## II.    *Procedural History*

Nicosia brought this putative class action below against Amazon, alleging that Amazon had sold and was continuing to sell weight loss products containing sibutramine to its customers in violation of the CPSA, 15 U.S.C. §§ 2051-89, and state consumer protection laws.  He alleged additional claims for breach of implied warranty and unjust enrichment.  The complaint sought both damages and an injunction to prohibit Amazon from further sale of products containing sibutramine.

After suit was filed, Amazon informed the district court that it intended to move to dismiss the complaint on the ground that Nicosia was subject to Amazon's mandatory arbitration provision.  The district court stayed discovery pending resolution of Amazon's anticipated motion to dismiss.

On October 2, 2014, Nicosia sought reconsideration of the district court's stay of discovery with respect to "subjects put at issue by Defendant's requested motions to dismiss Plaintiff's individual claims and to compel arbitration."  Pl.'s Ltr. 1, ECF No. 23.  Nicosia requested discovery concerning his "individual purchases of *1 Day Diet* . . . from Amazon, and discovery supporting Amazon's claims that Plaintiff provided his individual consent to arbitrate his

claims made in this action." *Id.* at 2. The district court denied Nicosia's motion for reconsideration of the discovery stay, clarifying that "*all* discovery in this action is temporarily stayed pending resolution of the motion to dismiss," but ruling that "[t]o the extent limited discovery becomes necessary in connection with a factual dispute in the anticipated motion to dismiss, Plaintiff may then submit proposed narrowly-tailored and specific requests to the Court for approval prior to propounding any such request." Special App. 4.

Nicosia moved for preliminary injunctive relief on December 19, 2014, requesting an order enjoining Amazon from selling weight loss products containing sibutramine and requiring Amazon to provide remedial notices to past consumers of those products.

On December 24, 2014, Amazon moved to dismiss the complaint. Amazon did not move to compel arbitration, but instead argued that the complaint should be dismissed "in favor of individual arbitration" for failure to state a claim because Nicosia had agreed to arbitration. Mot. to Dismiss 5, ECF No. 52-1. Amazon submitted the declaration and the exhibits described above.

The district court granted Amazon's motion to dismiss, concluding that Nicosia failed to state a claim because he was on constructive notice of

Amazon's conditions of use.  In doing so, the district court relied on the Order

Page and the 2012 Conditions of Use as well as Amazon's assertion that Nicosia

created an Amazon account in 2008 by signing on through the Registration Page,

and used that account to make his purchases of *1 Day Diet*.  The district court

then concluded that Nicosia was given reasonable notice of the conditions of use

given:  (1) the conspicuousness of the hyperlink to the 2012 Conditions of Use on

the Order Page; and (2) the fact that Nicosia signed up for an Amazon account

via the Registration Page in 2008, which required assent to the 2008 Conditions of

Use that named King County as the forum for suit but provided that the

conditions were subject to change.

       The district court also concluded that questions as to the validity of

the agreement as a whole had to be submitted to arbitration.  After

acknowledging that courts generally consider the merits of requested injunctive

relief even where the underlying claims will be sent to arbitration, the district

court then held that Nicosia lacked standing to pursue a preliminary injunction,

and that, in any event, he could not obtain this relief because he did not

demonstrate a likelihood of prevailing on the merits of his CPSA claim.

       This appeal followed.

*DISCUSSION*

We consider first the district court's grant of Amazon's motion to dismiss and second its denial of Nicosia's motion for a preliminary injunction.

**I.** *The Motion to Dismiss*

**A.** *Applicable Law*

The principal issue presented is whether Nicosia is bound by the mandatory arbitration provision in Amazon's Conditions of Use. Procedural and substantive questions of law are implicated.

**1.** *Procedural Framework*

The Federal Arbitration Act (the "FAA") provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Supreme Court has repeatedly instructed that the FAA "embod[ies] [a] national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (second alteration in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). "[T]his policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). But the FAA "does not require parties to arbitrate when they have not

agreed to do so." *Id.* (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

The question of whether the parties have agreed to arbitrate, *i.e.*, the "question of arbitrability," is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "This principle 'flow[s] inexorably from the fact that arbitration is simply a matter of contract between the parties.'" *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002).

The question of arbitrability usually arises in the context of a motion to compel arbitration. Under the FAA, parties can petition the district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The district court must stay proceedings once it is "satisfied that the parties have agreed in writing to arbitrate an issue or issues

underlying the district court proceeding." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (quoting *McMahan Sec. Co. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 85 (2d Cir. 1994)).  In deciding motions to compel, courts apply a "standard similar to that applicable for a motion for summary judgment." *Bensadoun*, 316 F.3d at 175.  The summary judgment standard requires a court to "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (internal quotation marks omitted).  In doing so, the court must draw all reasonable inferences in favor of the non-moving party.  *See Wachovia Bank*, 661 F.3d at 171-72.

"If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.")); *accord Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001).  "[B]ut where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that

legal issue and 'avoid the need for further court proceedings.'" *Wachovia Bank*, 661 F.3d at 172 (quoting *Bensadoun*, 316 F.3d at 175).

> In this case, Amazon did not move to compel arbitration and instead moved pursuant to Rule 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief may be granted, relying on the arbitration provision in the 2012 Conditions of Use. *See* Fed. R. Civ. P. 12(b)(6). Some district courts in this Circuit have treated motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration. *See, e.g., Begonja v. Vornado Realty Tr.*, No. 15 Civ. 4665 (PAE), 2016 WL 356090, at *1 n.1 (S.D.N.Y. Jan. 29, 2016); *Cupples v. Valic Fin. Advisors, Inc.*, No. 13-CV-4501(JS)(AKT), 2014 WL 4662272, at *3 (E.D.N.Y. Sept. 18, 2014); *Jillian Mech. Corp. v. United Serv. Workers Union Local 355*, 882 F. Supp. 2d 358, 363 (E.D.N.Y. 2012). The district court here, however, specifically declined to do so because, it reasoned, Amazon had not explicitly or implicitly asked the court to order arbitration. We agree with the district court that because Amazon's motion to dismiss neither sought an order compelling arbitration nor indicated that Amazon would seek to force Nicosia to arbitrate in the future, it was proper not to construe the motion to dismiss as a motion to compel arbitration, to which the summary judgment standard would apply.

Nicosia argues that the district court erred in not construing

Amazon's motion as a motion to compel arbitration, citing *Bensadoun v. Jobe-Riat*,

316 F.3d 171 (2d Cir. 2003).  There, we held that it was "appropriate" to use the

"summary judgment standard . . . in cases where the District Court is required to

determine arbitrability, regardless of whether the relief sought is an order to

compel arbitration or to prevent arbitration."  *Id.* at 175.  We did not, however,

hold that the summary judgment standard was "mandatory" in such cases.

When the moving party does not manifest an intention to arbitrate the dispute,

*Bensadoun* does not require the district court to convert the motion to dismiss to

one to compel.  Here, given the absence of a clear indication of Amazon's intent

to compel Nicosia to arbitrate, the district court properly proceeded with the

motion as one to dismiss, without converting it to a motion to compel

arbitration.[3]  Accordingly, we review the district court's ruling as the grant of a

motion to dismiss pursuant to Rule 12(b)(6).

We review *de novo* the dismissal of a complaint pursuant to Rule

12(b)(6), construing the complaint liberally, accepting all factual allegations as

---

[3]      We do not decide whether, in the absence of an indication of an intent on the part of the movant to compel arbitration, the district court has discretion to convert a motion to dismiss to a motion to compel.  We hold only that the district court did not err in not converting under the circumstances here.

true, and drawing all reasonable inferences in the plaintiff's favor. *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers*, 282 F.3d at 152 (quoting *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (*per curiam*)); *see also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *see also Chambers*, 282 F.3d at 153. A "necessary prerequisite" for taking into account materials extraneous to the complaint "is that the 'plaintiff *rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough.'" *Global Network Commc'ns, Inc. v. City of New*

*York*, 458 F.3d 150, 156 (2d Cir. 2006) (alterations omitted) (quoting *Chambers*, 282

F.3d at 153).  This generally occurs when the material considered is a "contract or

other legal document containing obligations upon which the plaintiff's complaint

stands or falls, but which for some reason -- usually because the document, read

in its entirety, would undermine the legitimacy of the plaintiff's claim -- was not

attached to the complaint."  *Id.* at 157.

Even where a document is considered "'integral' to the complaint, it

must be clear on the record that no dispute exists regarding the authenticity or

accuracy of the document."  *DiFolco*, 622 F.3d at 111 (quoting *Faulkner v. Beer*, 463

F.3d 130, 134 (2d Cir. 2006)).  "It must also be clear that there exist no material

disputed issues of fact regarding the relevance of the document."  *Faulkner*, 463

F.3d at 134.  This principle is driven by a concern that a plaintiff may lack notice

that the material will be considered to resolve factual matters.  *See Cortec Indus.,

Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).  Thus, if material is not

integral to or otherwise incorporated in the complaint, it may not be considered

unless the motion to dismiss is converted to a motion for summary judgment

and all parties are "given a reasonable opportunity to present all the material that

is pertinent to the motion."  Fed. R. Civ. P. 12(d).

In sum, when it is apparent -- on the face of the complaint and documents properly incorporated therein -- that claims are subject to arbitration, a district court may dismiss in favor of arbitration without the delay of discovery. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774-76 (3d Cir. 2013). If, however, there is a dispute as to the relevance, authenticity, or accuracy of the documents relied upon, the district court may not dismiss the complaint with those materials in mind. *Cf. Chambers*, 282 F.3d at 154. If the district court is going to rely on the extrinsic materials, the proper course is to convert the motion to a motion for summary judgment dismissing the case in favor of arbitration, after providing notice to the parties and an opportunity to be heard.

### 2. *Substantive Law*

State law principles of contract formation govern the arbitrability question. *See Specht*, 306 F.3d at 27. The district court applied Washington law on the question of contract formation, and the parties do not challenge that decision on appeal. The determination of whether parties have contractually bound themselves to arbitrate under state law is subject to *de novo* review. *See id.* at 26.

Washington courts have not specifically addressed the question of the reasonableness of notice of additional terms in online contracts, *see Kwan v. Clearwire Corp.*, No. C09-1392JLR, 2012 WL 32380, at *8 (W.D. Wash. Jan. 3, 2012) (noting absence of reported cases), but it is clear that general contract principles under Washington law apply to agreements made online, *see Spam Arrest, LLC v. Replacements, Ltd.*, No. C12-481RAJ, 2013 WL 4675919, at *8 n.10 (W.D. Wash. Aug. 29, 2013) (finding no authority to "suggest[] that Washington law applies differently to online contracts").  Indeed, as we have explained on multiple occasions, "new commerce on the Internet . . . has not fundamentally changed the principles of contract."  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004); *accord Schnabel*, 697 F.3d at 124; *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

Under Washington law, contract formation requires an objective manifestation of mutual assent.  *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash. 2d 171, 177 (2004) (en banc) ("Washington follows the objective manifestation test for contracts."); *In re Marriage of Obaidi & Qayoum*, 154 Wash. App. 609, 616 (2010) ("A valid contract requires a meeting of the minds on the essential terms."); *see also* Wash. Rev. Code § 62A.2-204.  "Whether parties

manifested mutual assent is a question of fact." *Spam Arrest*, 2013 WL 4675919, at

*8 (citing *Sea-Van Invs. Assocs. v. Hamilton*, 125 Wash. 2d 120 (1994)). "The

existence of mutual assent may be deduced from the circumstances . . . ." *Jacob's*

*Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wash. App. 743, 765 (2007).

Where a party has signed a contract without reading it, she can argue that

mutual assent was lacking if she was "deprived of the opportunity to read the

contract" or if the contract was not "'plain and unambiguous.'" *Yakima Cty. (W.*

*Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wash. 2d 371, 389 (1993)

(quoting *Skagit State Bank v. Rasmussen*, 109 Wash. 2d 377, 381-84 (1987)). "So

long as a[n] [offeree] could have seen a reasonably conspicuous reference to the

. . . Agreement . . . a jury could conclude that [she] manifested assent." *Spam*

*Arrest*, 2013 WL 4675919, at *8 (citing *M.A. Mortenson Co. v. Timberline Software*

*Corp.*, 140 Wash. 2d 568 (2000) (en banc)).

       Washington has also upheld the validity of shrinkwrap agreements,

endorsing the view that "[n]otice on the outside, terms on the inside, and a right

to return the software for a refund if the terms are unacceptable . . . may be a

means of doing business valuable to buyers and sellers alike." *M.A. Mortenson*,

140 Wash. 2d at 582-83 (quoting *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th

Cir. 1996)).  The validity of shrinkwrap agreements assumes that buyers have

notice of the *existence* of standard adhesion terms, even if they are not read or

understood.  *See id.* at 584 (enforcing terms of adhesion where text of terms were

"set forth explicitly or referenced in numerous locations"); *Hill v. Gateway 2000,*

*Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) (relying on fact that plaintiffs "concede[d]

noticing the statement of terms [on the box], but den[ied] reading it"); *see also*

*Specht*, 306 F.3d at 33-34 (distinguishing shrinkwrap cases as instances where

notice of existence of additional terms was provided).

Manifestation of assent to an online contract is not meaningfully

different, and can be accomplished by "words or silence, action or inaction," so

long as the user "intends to engage in the conduct and knows or has reason to

know that the other party may infer from his conduct that he assents.'"  *Schnabel*,

697 F.3d at 120 (footnote omitted) (quoting *Restatement (Second) of Contracts* §

19(2) (1981).  As with paper contracts or shrinkwrap agreements, to be bound,

an internet user need not actually read the terms and conditions or click on a

hyperlink that makes them available as long as she has notice of their existence.

*See id.* at 121 ("As a general principle, an offeree cannot actually assent to an offer

unless the offeree knows of its existence." (internal quotation marks omitted));

*Specht*, 306 F.3d at 29-30 ("[C]licking on a . . . button does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the . . . button would signify assent to those terms.").

Under Washington law, a person has notice of a fact if she "[h]as actual knowledge of it."  Wash. Rev. Code § 62A.1-202(a)(1); *see also Register.com*, 356 F.3d at 402-03 (concluding that website user who manifested assent with actual knowledge of terms was bound by them).  Where there is no actual notice of contract terms, "an offeree is still bound by the provision if he or she is on *inquiry* notice of the term and assents to it through the conduct that a reasonable person would understand to constitute assent."  *Schnabel*, 697 F.3d at 120; *see also* Wash. Rev. Code Ann. §§ 62A.1-202(a)(3), (d) (charging person with inquiry notice if she "has reason to know that it exists" "[f]rom all the facts and circumstances known to the person at the time in question" or has received notification of it from someone who took "such steps as may be reasonably required to inform the other person in ordinary course").

One common way of alerting internet users to terms and conditions is via a "clickwrap" agreement, which typically requires users to click an "I agree" box after being presented with a list of terms or conditions of use.  *See*

*Register.com*, 356 F.3d at 402-03, 429.  Clickwraps force users to "expressly and

unambiguously manifest either assent or rejection prior to being given access to

the product."  *Id*. at 429.  In contrast, "browsewrap" agreements involve terms

and conditions posted via hyperlink, commonly at the bottom of the screen, and

do not request an express manifestation of assent.  *See Specht*, 306 F.3d at 31-32

(describing what would later be termed "browsewrap").  In determining the

validity of browsewrap agreements, courts often consider whether a website user

has actual or constructive notice of the conditions.  *See id.* at 32; *Schnabel*, 697 F.3d

at 129 n.18 (noting that browsewrap provisions are generally enforced only if

"the website user . . . had actual or constructive knowledge of the site's terms and

conditions, and . . . manifested assent to them" (quoting *Cvent, Inc. v. Eventbrite,

Inc.*, 739 F. Supp. 2d 927, 937-38 (E.D. Va. 2010))); *see also In re Zappos.com, Inc.,

Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1063-64 (D. Nev. 2012)

("[T]he determination of the validity of a browsewrap contract depends on

whether the user has actual or constructive knowledge of a website's terms and

conditions.").

        Whether there was notice of the existence of additional contract

terms presented on a webpage depends heavily on whether the design and

content of that webpage rendered the existence of terms reasonably conspicuous. *See Nguyen*, 763 F.3d at 1177-78; *Spam Arrest*, 2013 WL 4675919, at *8. "Clarity and conspicuousness of arbitration terms are important in securing informed assent." *Specht*, 306 F.3d at 30. Thus, when terms are linked in obscure sections of a webpage that users are unlikely to see, courts will refuse to find constructive notice. *See id.* at 30-32 (finding insufficient notice where only reference to conditions of use was at the bottom of screen via hyperlink and webpage did not indicate that "download now" button constituted agreement to terms and conditions); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) (finding no notice where "website did not prompt [the user] to review the Terms and Conditions and . . . the link to the Terms and Conditions was not prominently displayed so as to provide reasonable notice of the Terms and Conditions"); *Zappos.com*, 893 F. Supp. 2d at 1064 (concluding user did not manifest assent to conditions of use that were "inconspicuous, buried in the middle to bottom of every . . . webpage among many other links, and the website never directs a user to the Terms of Use").

**B.**     *Application*

We conclude that the district court erred in granting Amazon's motion to dismiss.  First, the district court erred in considering certain factual materials extrinsic to the complaint.  Second, Nicosia has plausibly stated a claim, as we are not convinced at this stage that he is bound by the arbitration clause.

**1.**     *Consideration of Materials Extraneous to the Complaint*

As an initial matter, we conclude that the district court correctly determined that the Order Page and 2012 Conditions of Use were an embodiment of the contract made between Nicosia and Amazon, and thus integral to the complaint.  *See Global Network*, 458 F.3d at 157.  Nicosia did not attach a copy of the Order Page to his complaint, but the complaint alleges injuries on the basis of the purchases made on Amazon, made possible only via clicking "Place your order" on the Order Page.  *See* Add. B.  Thus, the Order Page and the linked 2012 Conditions of Use were part of the contract incorporated into the complaint by reference.  *See Chambers*, 282 F.3d at 153 n.4 (considering contract relied upon as integral to complaint, which was "replete with references

to the contracts and request[ed] judicial interpretation of their terms").  Therefore the district court properly considered them.[4]

The district court also relied on additional extrinsic materials in dismissing the complaint.  Specifically, the district court relied on Amazon's assertion that Nicosia's purchases were made using an account created in 2008 and that to have registered for an account in 2008 one must have checked a box on the Registration Page, acknowledging acceptance of the 2008 Conditions of Use.  Based on those assertions, the district court concluded that Nicosia *himself* created the account in 2008 and personally assented to the 2008 Conditions of Use.  This was error, as those facts were neither alleged in nor integral to the complaint.  Most importantly, their authenticity and relevance were disputed below.

---

[4]      The district court relied on the corrected version of the Order Page "for items sold by third-party sellers" on Amazon, rather than the screenshot initially submitted by Amazon in error depicting the order screen for "certain products manufactured by Amazon."  On appeal, Nicosia disputes this finding, contending that the court should have relied on the earlier submission because his complaint alleges that he purchased *1 Day Diet* from Amazon, not a third-party seller.  However, there is no allegation that Amazon manufactured *1 Day Diet*.  Further, while the later submission is described by Amazon as depicting the Order Page "for items sold by third-party sellers," Amazon does not contest its role as an additional seller of the product.  Nevertheless, because the pages are substantially the same, our analysis and conclusion would be essentially the same if we used the earlier submission instead.  A copy of the earlier submission is attached as Addendum C.

First, contrary to the district court's assertion, Nicosia did not admit to or allege that he created an account with Amazon in 2008. Nowhere in the complaint does Nicosia so allege. Nor is the Registration Page integral to the complaint, as Nicosia did not "rel[y] heavily upon its terms and effect" in drafting his complaint, in contrast to the Order Page and 2012 Conditions of Use. *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext*, 62 F.3d at 72). Account registration with Amazon in 2008 was "neither mentioned nor relied upon" by Nicosia, and its nexus to the contract relied upon is "too attenuated to render [it] integral to the complaint." *Global Network*, 458 F.3d at 156; *see Chambers*, 282 F.3d at 154 (holding that certain codes of fair practice were improperly considered despite the fact that they may be incorporated into the contract).

Second, because Nicosia disputes the accuracy and authenticity of the 2008 registration, the Registration Page and disputed fact of Nicosia's registration should not have been considered at the motion to dismiss stage. *See Faulkner*, 463 F.3d at 134 ("[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."). The Amazon declarations assert that: (1) to make a purchase on Amazon.com, a registered account had to be used; and (2) Nicosia's

purchases were made using an account created in 2008. Even assuming these statements to be true, they do not exclude the possibility that Nicosia used an account that he did not create. Nicosia could have used a shared account created by a member of his family to make his purchases. Further, the generic Registration Page screenshot submitted by Amazon was apparently captured in 2014, as indicated by the 2014 copyright notice at the bottom of the page. *See* Add. A. While Amazon asserts that the webpage depicts a version that Nicosia allegedly saw in 2008, there is nothing in the record to suggest that the Registration Page did not change -- as some of the conditions of use and arbitration clause did -- in the intervening six years.

Finally, the relevance of the 2008 registration is disputed, as the parties disagree about whether and how the account registration relates to the contractual relationship. *See Faulkner*, 463 F.3d at 134 ("It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."); *Chambers*, 282 F.3d at 154 ("[T]he parties disagree as to whether and how the Codes relate to or affect the contractual relationships at issue."). The 2008 Conditions of Use that Nicosia would have been bound to at the time of alleged registration listed King County as the exclusive forum in which to bring

suit.  It did not include an arbitration provision.  While the 2008 Conditions of Use did reserve Amazon's right to change those terms at any time, this did not necessarily bind Nicosia to any change of terms without notice.  Under Washington contract law, such unilateral modifications are only binding if there is notice and assent to the changed terms.  *See Gaglidari v. Denny's Rests., Inc.*, 117 Wash. 2d 426, 435 (1991) (holding employee was not bound by unilateral changes to company policy because she did not receive reasonable notice of changes).

Therefore, while the district court correctly incorporated the Order Page and 2012 Conditions of Use as integral to the complaint, it erred in considering the Registration Page and 2008 Conditions of Use on a motion to dismiss.

> **2.**     ***Whether Nicosia Plausibly Stated That There Was No Constructive Notice of the 2012 Conditions of Use***

Considering only the allegations in the complaint, the Order Page, and the 2012 Conditions of Use linked thereto, we conclude that Nicosia plausibly stated a claim for relief.

Nicosia argues that the 2012 Conditions of Use were a browsewrap agreement.  Amazon, like the district court, maintains that the agreement here was neither a clickwrap agreement nor a browsewrap agreement; rather, it was

something in between. An Amazon purchaser was not required to click an "I agree" box after being presented with a list of terms and conditions. Nor was the purchaser simply left to browse the page, as she was asked to click on a "Place your order" button after being told elsewhere on the page that "By placing your order, you agree to Amazon.com's privacy notice and conditions of use," with the latter phrase hyperlinked to the 2012 Conditions of Use. Add. B. For purposes of this appeal, we assume without deciding that the agreement was a hybrid between a clickwrap and a browsewrap agreement. In making this assumption, we do not mean to suggest that a "hybrid" agreement is a type of agreement that Washington law would recognize as such. The question is whether a reasonably prudent offeree would know that the 2012 Conditions of Use governed, such that her purchase manifested implied assent to the additional terms. *See Specht*, 306 F.3d at 29; *see also Schnabel*, 697 F.3d at 120 ("[I]n cases such as this, where the purported assent is largely passive, the contract-formation question will often turn on whether a reasonably prudent offeree would be on inquiry notice of the term at issue."); *cf. Nguyen*, 763 F.3d at 1177 ("[T]he validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract.").

Turning to the Order Page, we are not convinced that notice was sufficient as a matter of Washington law. Near the top of the page, below the "Review your order" heading, the critical sentence appears in smaller font: "By placing your order, you agree to Amazon.com's privacy notice and conditions of use." Add. B. The phrases "privacy notice" and "conditions of use" appear in blue font, indicating that they are clickable links to separate webpages. The body of the page summarizes the user's purchase and delivery information. Among other things, users are shown their shipping address, billing address, and payment method, and given the option to edit that information or "try Amazon Locker." Users are also given the opportunity to change the delivery date, enter gift cards and promotional codes, and sign up for "FREE Two-Day Shipping with a free trial of Amazon Prime." The Amazon Prime promotion features the words "FREE Two-Day Shipping" four times in the center of the page, appearing in orange, green, and black fonts, and in white font against an orange banner. On the right side of the page appears a "Place your order" button above a box with the heading "Order Summary." The Order Summary box lists the cost of the items to be purchased, shipping and handling costs, total price before tax, estimated tax to be collected, purchase total, gift card amount, and order total.

The words "Order total" appear in bold, red font.  A large area in the center of the page has been redacted, but presumably features a picture of the product being purchased, its name, price, quantity, stock and seller information, and gifting options.  Near the bottom of the page, there are a number of sentences in faint, black font directing users to links to other Amazon webpages for additional information, such as tax and seller information, customer assistance pages, and product return policies.  At the very bottom of the page, links to the Conditions of Use and Privacy Policy appear again in blue, next to Amazon's copyright notice.

Notably, unlike typical "clickwrap" agreements, clicking "Place your order" does not specifically manifest assent to the additional terms, for the purchaser is not specifically asked whether she agrees or to say "I agree."  *Cf. Register.com*, 356 F.3d at 402-03, 429 & n.41.  Nothing about the "Place your order" button alone suggests that additional terms apply, and the presentation of terms is not directly adjacent to the "Place your order" button so as to indicate that a user should construe clicking as acceptance.  *Cf. Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 840 (S.D.N.Y. 2012) (finding Facebook user was "informed of the consequences of his assenting click" because he was shown, immediately

- 31 -

below the "Sign Up" button, a notice stating, "By clicking Sign Up, you are

indicating that you have read and agree to the Terms and Service").

      The message itself -- "By placing your order, you agree to

Amazon.com's . . . conditions of use" -- is not bold, capitalized, or conspicuous in

light of the whole webpage. *Cf. Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585,

587, 589 (1991) (enforcing forum selection clause printed on a cruise ticket where

notice of conditions was printed in bold font and capital letters on the front of the

ticket); *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 197 (2d Cir. 2015) (multiple

bolded, capitalized headings alerting customers of terms and conditions was

sufficiently reasonable notice). Proximity to the top of a webpage does not

necessarily make something more likely to be read in the context of an elaborate

webpage design. *See Nguyen*, 763 F.3d at 1179 ("[E]ven close proximity of the

hyperlink to relevant buttons users must click on -- without more -- is insufficient

to give rise to constructive notice."). There are numerous other links on the

webpage, in several different colors, fonts, and locations, which generally

obscure the message. *See Zappos.com*, 893 F. Supp. 2d at 1064 ("The Terms of Use

is inconspicuous, buried in the middle to bottom of every Zappos.com webpage

among many other links, and the website never directs a user to the Terms of

Use.").  Although it is impossible to say with certainty based on the record, there appear to be between fifteen and twenty-five links on the Order Page, and various text is displayed in at least four font sizes and six colors (blue, yellow, green, red, orange, and black), alongside multiple buttons and promotional advertisements.  Further, the presence of customers' personal address, credit card information, shipping options, and purchase summary are sufficiently distracting so as to temper whatever effect the notification has.  *See Nguyen*, 763 F.3d at 1179 ("Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound.").

To draw on Judge Leval's analogy in *Register.com*,[5] it is as if an apple stand visitor walks up to the shop and sees, above the basket of apples, a wall filled with signs.  Some of those signs contain information necessary for her purchase, such as price, method of payment, and delivery details, and are displayed prominently in the center of the wall.  Others she may quickly

---

[5]        In *Register.com*, Judge Leval provided an apple stand analogy to describe the basis for imputing constructive knowledge on a repeat consumer who is alerted to terms of use after each purchase.  356 F.3d at 401; *see Schnabel*, 697 F.3d at 124-25.  This analogy was extended in *Fteja*'s description of imputing knowledge of terms contained in an unclicked hyperlink, so long as the consequences of assenting are conveyed and the user is directed where to click to view the additional terms.  841 F. Supp. 2d at 839-40.

disregard, including advertisements for other fruit stands. Among them is a sign binding her to additional terms as a condition of her purchase. Has the apple stand owner provided reasonably conspicuous notice?

We think reasonable minds could disagree.

In a seeming effort to streamline customer purchases, Amazon chose not to employ a clickwrap mechanism. While clickwrap agreements that display terms in a scrollbox and require users to click an icon are not necessarily required, *see Register.com*, 356 F.3d at 403 (an offeree need not specifically assent to certain terms by clicking an "I agree" icon so long as the offeree "makes a decision to take the benefit with knowledge of the terms of the offer"), they are certainly the easiest method of ensuring that terms are agreed to, *see Starkey*, 796 F.3d at 197 n.3 (noting that it would have been "simpler to resolve" this question had a clickwrap mechanism been used).

To be clear, we do not hold that there was no objective manifestation of mutual assent here as a matter of law. Rather, we conclude simply that reasonable minds could disagree on the reasonableness of notice. *See Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*, 135 Wash. App. 760, 767 (2006) ("Whether particular notice was reasonable is ordinarily a question of fact for the

jury.").[6]  We therefore hold that Amazon has failed to show that Nicosia was on notice and agreed to mandatory arbitration as a matter of law.  The district court thus erred in concluding that Nicosia had failed to state a claim under Rule 12(b)(6).[7]

## II.    *The Motion for a Preliminary Injunction*

Nicosia moved for a preliminary injunction requesting that:  (1) remedial notices be sent to past purchasers of products containing sibutramine; and (2) measures be put in place to prevent Amazon from unwittingly selling other products containing sibutramine.  The district court concluded that Nicosia lacked standing for an injunction because he "failed to plead facts that would permit the plausible inference that [he is] in danger of being wronged again."  Special App. 27 (internal quotation marks omitted).

---

[6]      Although "the making of the arbitration agreement . . . [is] in issue," no "trial" is required at this time because neither side has "petition[ed] . . . for an order directing that such arbitration proceed."  9 U.S.C. § 4; *see Bensadoun*, 316 F.3d at 175 ("The present case does not fall squarely under section 4 of the FAA or the cases interpreting it because the [defendants] never cross-moved to compel arbitration, and the FAA does not provide for petitions (such as [plaintiff]'s) brought by the party seeking to stay arbitration.").

[7]      Nicosia appeals the district court's determination that challenges on the basis of contract illegality *ab initio* are subject to arbitration.  As we have decided that factual questions remain as to the formation of the agreement to arbitrate, we need not reach that question.

### A. *Applicable Law*

Generally, "courts should consider the merits of a requested preliminary injunction even where the validity of the underlying claims will be determined in arbitration." *Am. Express. Fin. Advisors Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998) (citation omitted); *see also Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015) ("Where the parties have agreed to arbitrate a dispute, a district court has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration."). "[T]he expectation of speedy arbitration does not absolve the district court of its responsibility to decide requests for preliminary injunctions on the merits. Nor is this duty affected by the pro-arbitration policy manifested in the FAA." *Thorley*, 147 F.3d at 231. We generally review the denial of a preliminary injunction for abuse of discretion. *Lusk v. Vill. of Cold Spring*, 475 F.3d 480, 484 (2d Cir. 2007). A district court abuses its discretion when its decision rests on an error of law or clearly erroneous finding of fact. *Shain v. Ellison*, 356 F.3d 211, 214 (2d Cir. 2004). "The existence of standing is a question of law that we review *de novo*." *Id.*

Article III limits federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2. To satisfy this jurisdictional

requirement, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015) (quoting *Cooper v. USPS*, 577 F.3d 479, 489 (2d Cir. 2009)).  For each form of relief sought, a plaintiff "must demonstrate standing separately." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  A plaintiff seeking to represent a class must personally have standing.  *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a "real or immediate threat" of injury.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983); *Shain*, 356 F.3d at 215-16.  Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way.  *See DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344-45 (2d Cir. 1998).  While "enhanced risk" of future injury may constitute injury-in-fact in certain circumstances, such injuries are only cognizable where the plaintiff alleges actual future exposure to that

increased risk.  *See Baur v. Veneman*, 352 F.3d 625, 633-35, 640-42 (2d Cir. 2003)

(holding that plaintiff has standing to seek injunction to stop defendants from

butchering non-ambulatory cows because of plaintiff's enhanced risk of mad cow

disease as a consumer of beef); *LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir.

2002) (concluding that likelihood of exposure to additional sulfur dioxide

emissions qualifies as injury-in-fact).

**B.** *Application*

We agree with the district court that Nicosia did not establish a

likelihood of future or continuing harm.  Even assuming his past purchases of *1

Day Diet* resulted in injury and that he may continue to suffer consequences as a

result, he has not shown that he is likely to be subjected to further sales by

Amazon of products containing sibutramine.  Amazon has ceased selling *1 Day

Diet* on its website, and Nicosia has failed to allege that he intends to use

Amazon in the future to buy *any* products, let alone food or drug products

generally or weight loss products in particular.  *See* Compl. ¶ 15, ECF No. 1; *cf.*

*Baur*, 352 F.3d at 640 (concluding plaintiff established a "*present, immediate* risk of

exposure" by virtue of alleging to be a regular consumer of beef products).

Nicosia's remaining arguments are meritless.  The district court was correct in concluding that the private cause of action provided by the CPSA, 15 U.S.C. § 2073, is unable to confer standing to enforce provisions in the Poison Prevention Packaging Act (the "PPPA") relating to child-proof packaging requirements for controlled drugs.  *Compare* 15 U.S.C. § 2052(a)(5)(H) (excluding "drugs, devices, or cosmetics" from the definition of "consumer product" in the CPSA), *with* 16 C.F.R. § 1700.14(a)(4), (10) (requiring child-proof packaging for "Controlled drugs" and "Prescription drugs" under the PPPA).

## *CONCLUSION*

For the reasons set forth above, the order of the district court is **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** for further proceedings.

**ADDENDUM A** (J. App. 25)



amazon

Your Account | Help

Registration
New to Amazon.com? Register Below.

**My name is:** [redacted]
**My e-mail address is:** [redacted]
**Type it again:** [redacted]
**My mobile phone number is:** _____ (Optional)
Learn more

Protect your information with a password
This will be your only Amazon.com password.
**Enter a new password:** ••••••••
**Type it again:** ••••••••

Create account

By creating an account, you agree to Amazon.com's Conditions of Use and Privacy Notice.

Conditions of Use Privacy Notice
© 1995-2014. Amazon.com. Inc. or its affiliates

## ADDENDUM B (J. App. 91)

9/22/2014                                    Place Your Order - Amazon.com Checkout



### Review your order

By placing your order, you agree to Amazon.com's privacy notice and conditions of use.



*Why has sales tax been applied? See tax and seller information

Do you need help? Explore our Help pages or contact us

For an item sold by Amazon.com: When you click the "Place your order" button, we'll send you an email message acknowledging receipt of your order. Your contract to purchase an item will not be complete until we send you an email notifying you that the item has been shipped.

Colorado, Oklahoma, South Dakota and Vermont Purchasers: Important information regarding sales tax you may owe in your State

Within 30 days of delivery, you may return new, unopened merchandise in its original condition. Exceptions and restrictions apply. See Amazon.com's Returns Policy

Go to the Amazon.com homepage without completing your order

Conditions of Use | Privacy Notice © 1996-2014, Amazon.com, Inc.

## ADDENDUM C (J. App. 27)



**amazon**.com

SIGN IN   SHIPPING & PAYMENT   GIFT OPTIONS   PLACE ORDER

### Review your order

By placing your order, you agree to Amazon.com's privacy notice and conditions of use.

**Shipping address** Change

Ship to multiple addresses

Or try Amazon Locker
14 locations near this address

**Payment method** Change
VISA

**Billing address** Change

**Use Chase Ultimate Rewards**
Want to use Chase Ultimate
Rewards® points for this order?
Learn More

**Gift cards & promotional codes**

Enter Code   Apply

Place your order

**Order Summary**
Items (2):
Shipping & handling:

Total before tax:
Estimated tax to be collected:

**Order total:**

By placing your order, you agree to all of the terms found here.

How are shipping costs calculated?

**FREE** TWO-DAY SHIPPING

**FREE Two-Day Shipping on this Order:**   - We'd like to give you another
chance to try Amazon Prime. Start a free trial and save $7.36 on this order by
selecting "FREE Two-Day Shipping with a free trial of Amazon Prime" below.
» **Sign up for a free trial**

**Choose a delivery option:**
- ○ FREE Two-Day Shipping with a free trial of amazon*Prime*
- ○ FREE Shipping (5-8 business days)
- ◉ Standard Shipping (3-5 business days)
- ○ Two-Day Shipping (2 business days)
- ○ One-Day Shipping

**Choose a shipping preference:**
- ◉ Group my items into as few shipments as possible
- ○ I want my items faster. Ship items as they become available.
  (at additional cost)

Place your order

\*Why has sales tax been applied? See tax and seller information

Do you need help? Explore our Help pages or contact us

For an item sold by Amazon.com: When you click the "Place your order" button, we'll send you an email message acknowledging receipt of your order. Your contract to purchase an item will not be complete until we send you an email notifying you that the item has been shipped.

Colorado, Oklahoma, South Dakota and Vermont Purchasers: Important information regarding sales tax you may owe in your State

Within 30 days of delivery, you may return new, unopened merchandise in its original condition. Exceptions and restrictions apply. See Amazon.com's Returns Policy

Go to the Amazon.com homepage without completing your order.

Conditions of Use | Privacy Notice © 1996-2014, Amazon.com, Inc.